UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-254-GWU

PHILLIS NAPIER,                                                                                                              PLAINTIFF,

VS.                                 **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

Phyllis Napier brought this action to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits (DIB). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

        Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Napier, a 38-year-old former cashier, fork lift operator, housekeeper, press operator, nail technician, and paint line worker with a high school education, suffered from impairments related to hypothyroidism, fibromyalgia, and chronic back pain. (Tr. 13, 17). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 14-15). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 17-18). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 17).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. However, the

5

current record also does not mandate an immediate award of DIB. Therefore, the court must grant the plaintiff's summary judgment motion in so far as it seeks a remand of the action for further consideration and deny that of the defendant.

The residual functional capacity determined by the ALJ included an exertional restriction to light level work, restricted from a full range by: (1) an inability to perform pushing or pulling with the upper extremities; (2) a limitation to sitting for a total of six hours a day, standing or walking for a total of six hours a day with a sit/stand option in intervals of 30 minutes; (3) an inability to more than occasionally climb stairs or ramps with handrails; bend, balance and stoop; (4) an inability to ever kneel or crawl; (5) an inability to more than occasionally reach in front or overhead; and (6) an inability to more than occasionally pick, pinch or feel. (Tr. 14-15). In making this determination, the ALJ relied upon the opinion of Dr. Robert Hoskins, a one-time examiner. Dr. Hoskins examined the plaintiff in November of 2007 and noted an assessment of fibromyalgia by history, goiter and thyroid disease, a history of spurs in the spine, chronic back pain, a "fatty tumor" in the right arm (probably lipoma), a history of recurrent diverticulitis and obesity. (Tr. 323). The doctor indicted that she would have significant limitations with regard to walking, standing, bending, squatting, carrying, lifting and handling. (Id.). Some ambulation, gross manipulation and traveling would be excluded by her condition. (Id.). The ALJ's findings were essentially consistent with these restrictions.

Dr. David Bullock treated Napier for her physical problems. (Tr. 302-313, 317-319, 340-350, 381-397). In February of 2008, Dr. Bullock completed a Physical Capacities Assessment Form upon which he indicated that the plaintiff would be restricted from sitting for more than a total of one hour in an eight-hour time period, standing for more than two hours in an eight-hour time period and walking for more than three hours in an eight-hour time period. (Tr. 342). The claimant was limited to lifting up to 20 pounds occasionally. (Id.). Bending and reaching above shoulder level were restricted to occasional performance while squatting, crawling, and climbing were entirely precluded. (Id.). "Moderate" restrictions were placed on exposure to unprotected heights, being around moving machinery, and driving automotive equipment. (Id.). In April of 2009, Dr. Bullock reported the existence of even more severe physical restrictions with lifting and carrying limited to less than ten pounds occasionally and sitting and standing/walking each restricted to less than a total of two hours a day. (Tr. 393-397). These are far more severe restrictions than those found by the ALJ.

Napier argues that the ALJ erred in rejecting the opinion of Dr. Bullock, the treating source. In addressing this opinion, the ALJ only stated that "further, the report from Dr. David Bullock, MD, is granted weight to the extent that it is not inconsistent with the residual functional capacity assigned." (Tr. 16). The ALJ failed to state why this opinion was not entitled to superior weight, which as the opinion

7

of a treating source it might otherwise be under the federal regulations which provide that:

> generally, we give more weight to the opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or reports of individual examinations such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). The regulation further provides that when the opinion of a treating source is not given controlling weight, "we will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2). The Sixth Circuit Court of Appeals has found that this regulation contains a clear procedural requirement and the failure of the administration to comply with it can constitute reversible error even if the decision might otherwise be supported by substantial evidence. Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). The Sixth Circuit indicated that this requirement is important for claimants in order for them to understand the disposition of their cases since they might otherwise be confused when favorable evidence from a treating physician was disregarded. Id. In the present action, the ALJ does not say why he did not give the opinion of Dr. Bullock full weight, noting only that it was being given weight to the extent compatible with the ALJ's findings. The defendant in its memorandum of law has noted a number of arguments why this might have been the case but the ALJ was the one who

needed to make these arguments. <u>Memorandum in Support of the Commissioner's Decision</u>, Docket Entry No. 7, p. 7-11. Therefore, a remand of the action for further consideration will be required.

The record contained testimony from Vocational Expert Linda Taber which is somewhat problematic. The ALJ presented all factors found in his residual functional capacity assessment to Taber in a hypothetical question. (Tr. 14-15, 47). Taber testified that all of Napier's past work would be eliminated and indicated that the most important factor would be the need to change position between sitting and standing every 30 minutes. (Tr. 47). The witness reported that this factor would make it borderline and difficult to maintain other jobs. (Tr. 47-48). Taber stated that if the hypothetical individual could stay in one position at least 30 minutes, then the job of gatekeeper could be done. (Tr. 48). She then appeared to cite light assembler, surveillance monitor and sedentary assembler as jobs that could be performed with this particular time limit on sitting and standing in one position at a time. (Id.). The ALJ sought clarification that as long as one could sit or stand 30 to 35 minutes at a time, these jobs could be done and the witness stated yes. (Tr. 48-49). However, the claimant's representative then asked Taber if he understood her testimony to be that no jobs would remain available based on the first hypothetical question as presented and she stated yes. (Tr. 49). This seems contradictory to her previous answer that as long as one could stand or sit for at least 30 minutes (which was the time limit in the hypothetical question) some jobs

would be available. Thus, the vocational testimony is equivocal. The claimant was found to be unable to return to her past relevant work and, so, under the administrative regulations, the burden of coming forward with evidence that other jobs could be performed shifted to the Commissioner. 20 C.F.R. § 404.1512(g). In meeting this burden, the ALJ needs to rely upon vocational testimony that is clear and unambiguous rather than confusing and seemingly contradictory.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 7th day of June, 2011.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**